THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES PRICE, Defendant-Appellant.

Third District   No. 3—03—0495

Opinion filed March 18, 2005.

SLATER, P.J., specially concurring, joined by LYTTON, J.

Thomas A. Karalis, of State Appellate Defender's Office, of Ottawa, for appellant.

Jeff Tomczak, State's Attorney, of Joliet (Lawrence M. Bauer and Terry

A. Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOLDRIDGE delivered the opinion of the court:

The defendant, Charles Price, was convicted of two counts of theft (720 ILCS 5/16—1(a)(1), (a)(4) (West 2002)) and sentenced to concurrent five-year terms of imprisonment. On appeal, the defendant argues that (1) his two theft convictions are legally inconsistent; (2) the circuit court erred when it failed to instruct the jury on a lesser offense; and (3) one of the defendant's convictions must be vacated according to one act, one crime principles. We reverse and remand for a new trial.

## FACTS

On March 5, 2003, a superceding bill of indictment was filed charging the defendant and Anthony Rose with one count of burglary (720 ILCS 5/19—1(a) (West 2002)) and two counts of theft (720 ILCS 5/16—1(a)(1), (a)(4) (West 2002)) in connection with property taken from a law firm on November 30, 2002.

In the first theft count, the defendant and Rose were alleged to have "exerted unauthorized control over certain property of Schenk, Duffy & McNamara, to wit: office related property." In the second theft count, the defendant and Rose were alleged to have:

"knowingly obtained control over certain stolen property of Schenk, Duffy & McNamara, being office related property ***, under such circumstances as would reasonably induce them to believe that the property was stolen."

At trial, testimony revealed that an off-duty police officer working for the Joliet Housing Authority was patrolling a portion of housing authority property on December 1, 2002. At approximately 12:15 a.m., the officer observed the defendant and Rose walking away from the property, heading east over the Jackson Street bridge. Approximately one hour later, the officer observed Rose return to the property. Upon questioning, Rose told the officer that his friend's car had broken down, and he was getting a shopping cart to help him carry food. Rose then walked away with the cart, heading east over the Jackson Street bridge.

Approximately 10 minutes later, the officer observed the defendant and Rose walking back toward the property with the shopping cart, heading west over the Jackson Street bridge. The officer observed that the cart had several items in it, including a television set in its box and several briefcases, one of which contained a laptop computer. The officer questioned the men about the items in the cart. Rose answered that they found the items near the garbage at the back of a thrift store. After obtaining permission to look at the items, the officer found business cards from the Schenk, Duffy & McNamara law firm.

Testimony also revealed that the law firm of Schenk, Duffy & McNamara had been burglarized some time during the evening of November 30, 2002. The law firm was located about four blocks east from the housing authority property. A television, laptop, stereo, humidor with cigars, and several briefcases, among other things, had been taken from the firm. The officer found all of the firm's missing items in the shopping cart, except for a blue bank bag containing change.

Another officer also testified that Rose stated he received the items at the thrift store. However, the officer testified that Rose stated a woman at the thrift store gave him the items.

The State also offered the testimony of the woman who closed the thrift store on November 30, 2002. She testified that she closed the store at 5 p.m. and that there were no items outside the thrift store when she left.

During its deliberations, the jury asked the court to clarify the difference between the two theft charges and whether the defendant and Rose could be convicted of both. The judge answered by referring the jury back to the packet of jury instructions.

The jury returned verdicts of not guilty on the burglary charge and guilty on both theft charges. The defendant was later sentenced to concurrent five-year sentences. The defendant appeals from these two theft convictions.

## ANALYSIS

First, the defendant argues that the circuit court erred when it allowed the jury to return guilty verdicts on both theft counts. Specifically, the defendant argues that the two theft counts are mutually exclusive; accordingly, it is legally inconsistent to be found guilty of both counts simultaneously.

Logically inconsistent verdicts are permissible, but legally inconsistent verdicts may not stand. *People v. Edwards*, 337 Ill. App. 3d 912, 788 N.E.2d 35 (2002). Legally inconsistent verdicts occur when the trier of fact finds the same element to exist and not to exist for crimes arising from the same factual scenario. *In re Donald R.*, 343 Ill. App. 3d 237, 796 N.E.2d 670 (2003). We determine whether legally inconsistent verdicts exist by analyzing the statutory language of the charged crimes and the evidence introduced by the State during trial. *Edwards*, 337 Ill. App. 3d 912, 788 N.E.2d 35.

Statutory construction requires the reviewing court to determine and give effect to the legislature's intent. *People v. Ceja*, 351 Ill. App. 3d 299, 814 N.E.2d 171 (2004). Accordingly, we look to the plain language of the statute and resort to other tools of statutory construc-

tion only if the plain language is ambiguous. *Ceja*, 351 Ill. App. 3d 299, 814 N.E.2d 171. Statutory construction is a question of law that warrants *de novo* review. *Ceja*, 351 Ill. App. 3d 299, 814 N.E.2d 171.

■ Subsection (a)(1) of the theft statute (720 ILCS 5/16—1(a)(1) (West 2002)) provides that one commits theft when one knowingly "[o]btains or exerts unauthorized control over property of the owner." The possession of stolen property provision of the same statute (720 ILCS 5/16—1(a)(4) (West 2002)) provides that one commits theft when one knowingly "[o]btains control over stolen property knowing the property to have been stolen or under such circumstances as would reasonably induce him to believe that the property was stolen." We note that these two provisions do not constitute separate offenses (*People v. Siverson*, 333 Ill. App. 3d 884, 776 N.E.2d 850 (2002)); rather, they constitute two separate means of committing the single offense of theft (*People v. Graves*, 207 Ill. 2d 478, 800 N.E.2d 790 (2003)).

We note the legislature's use of the disjunctive "or" in section 16—1(a)(4); the statute thus provides that one commits theft when one knowingly obtains control over stolen property knowing the property to have been stolen, or when one knowingly obtains control over stolen property under circumstances as would reasonably induce him to believe that the property was stolen. In this case, the State sought to prosecute the defendant for theft under the latter description of theft. The charging document describes the third charge against the defendant and Rose in the following fashion:

"knowingly obtained control over certain stolen property of Schenk, Duffy & McNamara *** *under such circumstances as would reasonably induce them to believe that the property was stolen.*" (Emphasis added.)

Accordingly, a guilty verdict under section 16—1(a)(4), when charged in this fashion, indicates the jury found that the defendant did not in fact know that the property was stolen, but only reasonably believed it to be so. In contrast, the guilty verdict under section 16—1(a)(1) indicates the jury found that the defendant knew the property was stolen because the defendant was the actual thief.

At trial, the State produced evidence that the law office was burglarized on November 30, 2002. A police officer observed the defendant and Rose pushing a shopping cart containing the items taken from the law office. Rose told the officer that he found the items by the garbage at a thrift shop. He later told another officer that some unknown woman gave him the items at the rear of the thrift shop. Further, the State offered the testimony of the woman working at the thrift shop on November 30, 2002. She testified that there were no items by the garbage at the rear of the thrift shop when she closed the shop at 5 p.m.

■ The evidence introduced by the State at trial, coupled with the manner in which the State charged the defendant, indicates that the State was seeking a single conviction for theft. The State was proceeding on a theory of the defendant being the actual thief or in the alternative, that he had committed theft by possession of stolen property. We believe that one cannot be the actual thief and, at the same time, possess merely a reasonable belief that the property was stolen. Accordingly, we find that the jury's guilty verdicts are legally inconsistent in that it found both that the defendant knew the property was stolen and that the defendant did not in fact know that the property was stolen.

A circuit court's failure to send the jury back for further deliberations after it returns inconsistent verdicts necessitates a reversal and a new trial on all counts. *People v. Porter*, 168 Ill. 2d 201, 659 N.E.2d 915 (1995). Because the jury returned legally inconsistent verdicts in this case and the circuit court failed to send the jury back for further deliberations, the defendant is entitled to a new trial, and we need not address his other two arguments.

We reverse the judgment of the circuit court of Will County and remand for a new trial on all counts.

Reversed and remanded.

PRESIDING JUSTICE SLATER, specially concurring:

I agree that, based on the wording of the charges in the indictment, the two theft convictions are legally inconsistent. I also agree that, under such circumstances, existing precedent appears to require reversal and a new trial on all counts. See, *e.g.*, *People v. Fornear*, 176 Ill. 2d 523, 680 N.E.2d 1383 (1997); *People v. Porter*, 168 Ill. 2d 201, 659 N.E.2d 915 (1995). I note, however, that our supreme court reexamined the issue of inconsistent verdicts in *People v. Jones*, 207 Ill. 2d 122, 797 N.E.2d 640 (2003). In *Jones* the court explicitly overruled past precedent and held that defendants cannot challenge convictions on the sole basis that they are legally inconsistent with acquittals on other charges. Adoption of this position made Illinois law consistent with that of the United States Supreme Court. See *United States v. Powell*, 469 U.S. 57, 83 L. Ed. 2d 461, 105 S. Ct. 471 (1984) (consistency of verdicts not required by Constitution). The *Jones* court specifically noted, however, that a different rule applies to inconsistent *guilty* verdicts. In such cases a trial judge is required to send the jury back to deliberate further because the court cannot usurp the jury's function by guessing at what the jury really meant. *Jones*, 207 Ill. 2d at 135, 797 N.E.2d at 648.

*Jones* cited five cases in support of the inconsistent guilty verdict rule. In each of those cases the defendants were convicted of offenses which were not only inconsistent, they were also different crimes punishable by differing sentences. See *Fornear*, 176 Ill. 2d 523, 680 N.E.2d 1383 (defendant convicted of aggravated discharge of a firearm and reckless conduct); *Porter*, 168 Ill. 2d 201, 659 N.E.2d 915 (first and second degree murder); *People v. Flowers*, 138 Ill. 2d 218, 561 N.E.2d 674 (1990) (murder and voluntary manslaughter); *People v. Spears*, 112 Ill. 2d 396, 493 N.E.2d 1030 (1986) (attempted murder, armed violence and reckless conduct); *People v. Almo*, 108 Ill. 2d 54, 483 N.E.2d 203 (1985) (murder and voluntary manslaughter); see also *People v. Hoffer*, 106 Ill. 2d 186, 478 N.E.2d 335 (1985) (murder, voluntary manslaughter and involuntary manslaughter). In such situations, it would be unfair to the defendant to simply vacate the less serious offense, and unfair to the State to vacate the other. In this case, however, the defendant was convicted of a *single* offense. The various subsections of the theft statute do not set forth separate offenses but rather create a single offense of theft which may be committed in a number of ways. *People v. Graves*, 207 Ill. 2d 478, 800 N.E.2d 790 (2003); see also *People v. Marino*, 44 Ill. 2d 562, 256 N.E.2d 770 (1970). The penalty for violating subsection (a)(1) is no different than that of subsection (a)(4). See generally 720 ILCS 5/16—1 (West 2002). Under such circumstances, I see no reason not to simply vacate one of the theft convictions instead of reversing and remanding for a new trial. *Cf. People v. Lee*, 344 Ill. App. 3d 851, 801 N.E.2d 969 (2003) (where statute establishes multiple methods of committing single offense, no due process violation for courts to instruct jury in the disjunctive, and jury may return general verdict without deciding which method defendant used to commit offense); *People v. Siverson*, 333 Ill. App. 3d 884, 776 N.E.2d 850 (2002) (no due process violation for trial court to also instruct jury regarding subsection (a)(4) of theft statute even though defendant was only charged with violating subsection (a)(1)). Nevertheless, because our supreme court in *Jones* recently reiterated the necessity of reversing and remanding in cases of inconsistent guilty verdicts, I concur.

LYTTON, J., joins in this special concurrence.