Docket Nos. 100470, 100635 cons.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. CHARLES PRICE, Appellee.–THE PEOPLE OF THE STATE OF       ILLINOIS, Appellant, v. ANTHONY ROSE, Appellee.

*Opinion filed May 18, 2006.*

JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, McMorrow, Fitzgerald, Garman, and Karmeier concurred in the judgment and opinion.

**OPINION**

Charles Price and Anthony Rose were each charged with two counts of felony theft arising out of a single incident. They were tried together before a jury and convicted on both counts. Price was sentenced to five-year concurrent sentences on both counts, and Rose was sentenced to two-year concurrent sentences on both counts. Each defendant appealed separately. In a published opinion, the appellate court reversed Price's convictions and remanded for a new trial. 356 Ill. App. 3d 223. Rose's convictions were reversed and remanded in a summary order. No. 3–03–0497 (unpublished order under Supreme Court Rule 23). The State filed petitions for leave to appeal in both cases. We allowed the petitions and consolidated the cases on appeal to this court.

The two theft counts in the indictment were predicated on different sections of the theft statute (720 ILCS 5/16–1 (West 2002)) and alleged the commission of the same offense in two different ways. The appellate court determined that the guilty verdicts were legally inconsistent and remanded for a new trial. This case presents the question of whether the verdicts were legally inconsistent and, if inconsistent, whether we must remand for a new trial. We now reverse the judgments of the appellate court.

BACKGROUND

Price and Rose were both charged by indictment with one count of burglary and two counts of felony theft in the circuit court of Will County. The burglary count alleged that defendants entered the Schenk, Duff & McNamara law firm with the intent to commit a theft. The first theft count alleged that both defendants "exerted unauthorized control over *** office-related property, having a total value exceeding $300 ***, intending to deprive [the law firm] permanently of the use or benefit of said property." The second theft count alleged that both defendants "obtained control over *** office-related property having a total value exceeding $300 *** under circumstances that would reasonably induce them to believe that the property was stolen, intending to deprive [the law firm] of the use or benefit of the property."

At defendants' jury trial, a Joliet police officer testified she observed the defendants walking away from Joliet Housing Authority property at approximately 12:15 a.m. About an hour later, Rose returned to the property. The officer asked where he was going, and Rose explained that he needed to help his friend carry food because his friend's car had broken down. Rose then retrieved a shopping cart from the side of a building. The cart appeared to belong to the liquor store located there. He then headed eastbound across a bridge.

About 10 minutes later, the officer observed defendants returning together westbound over the bridge. Price was pushing a shopping cart filled with a laptop computer, radio, two briefcases, a humidor, and a combination TV/VCR. At the entrance to the housing authority property, the officer asked Rose where he had obtained the items in the shopping cart. He replied that he found them by the garbage at St. Vincent's Church. According to the officer, St. Vincent's Church is actually the DePaul Resale Shop, a thrift resale store. After obtaining Rose's permission, the officer examined the items and discovered a business card from the Schenk law firm inside a black briefcase.

The officer testified that the Schenk law firm is approximately four to six blocks from the place where she encountered defendants and that it would take approximately four to six minutes to walk that distance. According to the officer, no retail establishments were open on a Sunday between midnight and 1:30 a.m.

Another officer testified Rose stated he encountered an unknown female behind St. Vincent's who gave him the items in the cart. Rose told the officer he had previously taken items with permission from behind St. Vincent's. The officers dispatched a police car to the thrift store, but no items were found outside the building.

An employee of the St. Vincent DePaul Resale Shop testified that unwanted items were never placed in back of the store for people to take after hours. Since October 2002, discarded items have been placed in the garbage inside a closed garage and collected by the garbage service. She testified that she did not give the recovered items to

defendants and had never before seen those items. Evidence was introduced establishing that the items in the shopping cart belonged to various individuals in the Schenk law firm and had been removed without authority from anyone in that firm.

Following denial of defendants' motion for directed verdict, the case was submitted to the jury. During deliberations, the jury sent a note to the trial judge inquiring about the difference between the phrases "knowingly exerted unauthorized control" and "knowingly obtained control" in the jury instructions. The jury also asked whether there was "any clear distinction between the second and third charge" and whether defendants could be convicted of both. The judge responded in writing, directing the jurors to refer to the instructions submitted, and he gave no further guidance on the jurors' questions.

The jury acquitted defendants of burglary, but found them guilty of both theft counts. On the first theft count, it found both defendants guilty of theft of property exceeding $300 in value. On the second theft count, it found both defendants guilty of theft of stolen property exceeding $300 in value. Following denial of their posttrial motions, defendants were sentenced to concurrent terms of imprisonment. Defendants appealed separately.

In Price's appeal, the appellate court held, in a published opinion, that the guilty verdicts for counts II and III were legally inconsistent and remanded for a new trial. 356 Ill. App. 3d at 225-27. Two justices specially concurred, agreeing that the verdicts were legally inconsistent, but arguing that because both convictions were for theft and carried the same sentence, the better course would be to vacate one of the two convictions. Nevertheless, the two concurring justices believed that remand was mandated by this court's precedent, including *People v. Jones*, 207 Ill. 2d 122 (2003). 356 Ill. App. 3d at 227-28 (Slater, P.J., specially concurring, joined by Lytton, J.).

In Rose's appeal, the appellate court issued a Rule 23 summary order (166 Ill. 2d R. 23(c)) vacating the theft convictions and remanding for a new trial pursuant to the holding in *Price.* We consolidated the appeals for review in this court.

ANALYSIS

At the outset, we must determine whether the verdicts on count II and count III of the indictment were legally inconsistent. "Legally inconsistent verdicts occur when an essential element of each crime must, by the very nature of the verdicts, have been found to exist and to not exist even though the offenses arise out of the same set of facts." *People v. Frieberg*, 147 Ill. 2d 326, 343 (1992). When offenses involve mutually inconsistent mental states, a determination that one mental state exists is legally inconsistent with a determination of the existence of the other mental state. *People v. Hoffer*, 106 Ill. 2d 186, 195 (1985). Whether two verdicts are legally inconsistent presents a question of law and, therefore, our review is *de novo. Redmond v. Socha*, 216 Ill. 2d 622, 642 (2005).

Count II of the indictment alleged a violation of section 16–1(a)(1) of the theft statute. That section provides that one commits theft who knowingly "[o]btains or exerts unauthorized control over property of the owner." 720 ILCS 5/16–1(a)(1) (West 2002). Count III of the indictment alleged a violation of section 16–1(a)(4) of the theft statute. That section provides that one commits theft who "[o]btains control over stolen property knowing the property to have been stolen or under such circumstances as would reasonably induce him to believe that the property was stolen." 720 ILCS 5/16–1(a)(4) (West 2002). We recently confirmed earlier authority holding that " 'the several subsections of section 16–1 do not undertake to create a series of separate offenses, but rather to create a single offense of theft which may be performed in a number of ways.' " *People v. Graves*, 207 Ill. 2d 478, 484 (2003), quoting *People v. Fowler*, 72 Ill. App. 3d 491, 494-95 (1979), citing *People v. Marino*, 44 Ill. 2d 562 (1970).

The indictment alleged each defendant violated section 16–1(a)(1) in that they "knowingly exerted unauthorized control over property of Schenk, Duffy and McNamara *** intending to deprive Schenk, Duffy and McNamara permanently of the use or benefit of said property." The indictment alleged each defendant violated section 16–1(a)(4) in that they knowingly

obtained control over the Schenk firm property "under such circumstances as would reasonably induce them to believe that the property was stolen." Thus, the charging instrument accused defendants of a single offense of theft committed in two different ways.

Section 16–1(a)(4) sets out two distinct sets of circumstances, separated by the disjunctive "or," establishing the offense of theft. In the first instance, the offense is committed when one knowingly "[o]btains control over stolen property *knowing* the property to have been stolen." (Emphasis added.) In the second instance, the offense is committed when one knowingly obtains control over stolen property "under such circumstances as would reasonably induce" belief that the property was stolen. The appellate court reasoned that because count III of each indictment charged the offense in the second manner, conviction on those offenses indicates the jury found the defendants did not in fact know that the property was stolen, but only reasonably believed it to be stolen. 356 Ill. App. 3d at 226.

The guilty verdict on count II of each indictment, on the other hand, indicated that defendants knew the property was stolen because they were the "actual thieves." The appellate court reasoned that "one cannot be the actual thief and, at the same time, possess merely a reasonable belief that the property was stolen." 356 Ill. App. 3d at 227. Accordingly, the appellate court held the verdicts legally inconsistent because the jury found both that defendants knew the property was stolen, and that they did not know in fact that the property was stolen. 356 Ill. App. 3d at 227.

The State argues that the appellate court analysis is flawed for two reasons: (1) it is incorrect that a person who actually steals property cannot have a reasonable belief that the property is stolen, and (2) the General Assembly removed from section 16–1(a)(4) the former requirement that the property in question had been stolen by another. On the first point, the State contends that if the defendants stole the items themselves, they obviously knew of circumstances that would reasonably induce them to believe the items were stolen. The appellate court, however, determined section 16–1(a)(4)

applied only when a defendant "merely" had reason to believe items were stolen and not when a defendant was certain the items were stolen. The State notes the statute contains no limiting language. The statute is not ambiguous, the State argues, and thus courts have no authority to amend or add to the statute. *In re M.M.*, 156 Ill. 2d 53, 69 (1993). Hence, the statute requires only that a defendant obtain control over property under circumstances as would reasonably lead him to believe the property is stolen. This requirement is met even if the defendant is certain the property is stolen. Consequently, the State argues, the appellate court incorrectly concluded that one cannot both know and reasonably believe the property is stolen.

On the second point, the State argues that Public Act 83–715, effective July 1, 1984, amended the theft statute by deleting the words "by another" following the words "have been stolen" from the description of theft under section 16–1(a)(4). Since the amendment, appellate court panels have held that the "actual thief" may be prosecuted and convicted for obtaining control over stolen property. See *People v. Dabrowski*, 162 Ill. App. 3d 684, 690-91 (1987); *People v. Drake*, 156 Ill. App. 3d 425, 427-29 (1987). Thus, the State contends the verdict on the charge of violating section 16–1(a)(1) in count II is not legally inconsistent with the verdict on the charge of violating section 16–1(a)(4).

Defendants do not directly address the first prong of the State's argument. Instead, they argue that it is well settled that "a wrongful *taking* and a wrongful *receipt* should be viewed as distinct ways of establishing theft," and that "one cannot be convicted of both theft and the receipt of that property once stolen." (Emphases in original.) 1 J. Decker, Illinois Criminal Law §11.09, at 565 (3d ed. 2000). In this case, defendants contend count II of the indictment charged a wrongful taking, while count III charged a wrongful receipt of stolen property. The written questions to the court demonstrate that the jury obviously recognized the apparent dichotomy between the two charges. The jurors wanted to know the clear distinction between the two charges, and whether defendants could be convicted of both. The questions indicate that they perceived a

difference between "knowingly exerted unauthorized control" and "knowingly obtained unauthorized control."

Defendants argue that the difference between the two charges was in the character of the property at the time defendants acquired it. Defendants claim that at that time, the property had to be either "already stolen" or "not yet stolen." Accordingly, the trial judge should have responded to the jurors' questions by instructing them that they should choose between finding defendants not guilty of both theft counts or guilty of one of the two theft counts, but not the other.

In *Dabrowski*, our appellate court held that the 1984 amendment to the theft statute removed the requirement that the property in question was stolen "by another," finding the plain language of the amended statute unambiguous. *Dabrowski*, 162 Ill. App. 3d at 690-91. In *Drake*, the appellate court held that the definitions of theft in section 16–1(a)(1) and section 16–1(a)(4) overlap, and that the latter provision applies to conduct of the actual thief as well as to another. The State, therefore, is entitled to exercise its discretion and "prosecute under the statue of its choice." *Drake*, 156 Ill. App. 3d at 428. These holdings have not been challenged in any later cases. We agree that the actual thief may be prosecuted under the plain language of the present version of section 16–1(a)(4).

The language in the indictment does not specifically charge defendants either with actually stealing the property in question or with receiving the property after it was stolen. Count II alleges defendants "exerted" unauthorized control over the property. We held in *People v. Alexander*, 93 Ill. 2d 73, 78 (1982), that "[a] defendant can be found guilty of theft solely on the basis of knowingly *exerting* unauthorized control over the property of another at the time of arrest, because the crime of theft is not limited to the original taking of the property. [Citations.]" (Emphasis in original.) Thus, whether or not defendants were the original thieves, they could be convicted under section 16–1(a)(1) on the basis that they exerted control over the property at the time of their arrest.

The verdict forms provided for findings of guilt or innocence on theft of property and theft of stolen property. The jury could reasonably conclude that defendants committed theft on either

basis. The indictment did not require proof that the stolen property was received from another person. Hence, the jury's verdict does not fail of necessity on the ground that the property was either "already stolen" or "not yet stolen." The jury could have reasonably concluded defendants both stole the property and exerted control over it after it was stolen.

We also agree with the State that the actual thief has no choice but to believe that the property possessed is stolen. The distinction drawn by the appellate court, that the statute somehow differentiates between certainty and mere belief, is inconsistent with the plain, unambiguous language of the statute. Therefore, the verdicts on counts II and III are not legally inconsistent on that basis. Accordingly, we hold the appellate court erred in determining legal inconsistency between those verdicts.

Our holding does not mean, however, that convictions and sentences on both verdicts may stand. It has long been recognized that when two or more related offenses arise from the same conduct, only the conviction for the most serious offense is permitted. *People v. King*, 66 Ill. 2d 551, 562-64 (1977). Here, the convictions under counts II and III are for the same offense and arise from the same conduct. The State has conceded that the one act, one crime principle applies in this case and that one of the convictions must be vacated. The concurring appellate court justices agreed that the better course would be for the reviewing court simply to vacate one of the convictions, rather than to remand for a new trial. They felt constrained, however, to remand for a new trial because of this court's precedent in *People v. Jones*, 207 Ill. 2d 122 (2003). 356 Ill. App. 3d at 227-28.

In cases involving inconsistent jury verdicts, we have held that the proper remedy on appeal is to reverse the convictions and remand for a new trial. See *People v. Porter*, 168 Ill. 2d 201, 214-15 (1995); *Hoffer*, 106 Ill. 2d at 195. In *Jones*, we explained that it would be improper for the trial court to enter judgment on one of the inconsistent verdicts and, thereby, usurp the jury's independent function to determine guilt or innocence. *Jones*, 207 Ill. 2d at 135.

In this case, however, the verdicts were not legally inconsistent and conviction on either count was justified by the evidence. The jury plainly found that defendants were guilty of theft, acquitting them only of burglary. Vacation of the sentence on one of the counts would thus not usurp any jury function. Additionally, the punishment for theft is the same, whether the conviction is for violation of section 16–1(a)(1) or section 16–1(a)(4). The concurrent sentences imposed by the court were for the same term of years on each count.

Remand for a new trial under these circumstances would unnecessarily tax judicial resources. The State has suggested vacation of the judgment and sentence on count III. Defendant has expressed no preference, and we discern no reason to disregard the State's suggestion. Hence, we reverse the judgment of the appellate court and vacate defendants' convictions and sentences on count III of the indictment.

## CONCLUSION

There is no legal inconsistency between the verdicts of conviction on counts II and III of the indictment. One act, one crime principles, however, require vacation of one of the convictions and sentences. Remand for a new trial is unnecessary under these circumstances, because conviction under either count is supported by the evidence, and both the statutory penalty and the concurrent sentences actually imposed are identical. We therefore reverse the judgments of the appellate court and vacate the judgments of conviction and sentences on count III of the indictment.

*Appellate court judgments reversed;*
*circuit court judgments vacated in part.*